## Duc, Appellant, *v.* Struckus et ux.

Submitted May 26, 1942. Before Schaffer, C. J.; Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*I. Finkelstein* and *Robert F. Bogatin,* for appellant.

*Frank A. Simons,* for appellees.

Opinion by Mr. Justice Maxey, June 29, 1942:

This is an appeal from the decree of the court below sustaining preliminary objections to a third Amended Bill in Equity for specific performance of an agreement for the sale of land.

The principal reason assigned by the court below for its action in sustaining the objections and dismissing the last amended bill was that it set up "an entirely new and different cause of action obviously for the purpose of escaping the legal pitfall into which the plaintiff had placed himself by the first and second bills of complaint."

The original bill charged that William and Frances Struckus, the defendants, by written agreement on July 25, 1941, agreed to sell to Stephen Duc, the plaintiff, a parcel of real estate in Philadelphia, known as 2612 East Ontario Street, for $2,700. The agreement provided that "settlement to be made on or before September 5, 1941, and said time is hereby agreed to be the essence of this agreement. . . ." When the parties met at the office of the Pennsylvania Title Insurance Company on September 23, 1941, the defendants refused to accept the purchase money and execute the deed for the premises. The complainant attempts to excuse his tardiness by pleading that "the insertion of the date 'September 5, 1941,' was mistakenly made by the scrivener, to whom there had been dictated the date 'September 25, 1941,' for insertion as the time of settlement to be specified in said agreement." This averment was followed with an averment "of a mutual error and inadvertence of plaintiff and defendants, it being at all times prior to the execution of said agreement and subsequently, agreed, understood and assumed between the plaintiff as buyer and the defendants as sellers of said premises that settlement under said contract was to be made on or before September 25, 1941."

The prayer of the Bill was specifically to enjoin the defendants from selling or encumbering the premises and for an order on defendants to convey the premises to the plaintiff as provided in the agreement of sale. Preliminary objections to this bill were filed based upon the theory that the plaintiff must offer parol testimony to alter the date of settlement from September 5 to September 25, and since this "is a material term of the contract" and "of the essence of their agreement", such alteration by parol evidence would reduce the writing "to a parol contract for the sale of real estate and cannot be specifically enforced." Before this question could be decided, and even before argument, the plaintiff filed an amended bill varying his allegations in the

original bill concerning the date of settlement, and instead of specifying September 25, as set forth in the first bill, plaintiff alleged the parties agreed that settlement was to take place "sixty days from July 25, 1941." This brought it to the date of September 23, 1941, the date the parties met in the Pennsylvania Title Insurance Company's office. The prayer here was also amended by adding a specific request that the writing "be changed, reformed and corrected so as to read . . . 'settlement to be made on or before September 23, 1941. . . .'" Preliminary objections of the same tenor as the first objections with the additional charge of a material variance of the allegation as to the date was filed to this bill as amended. Before this was argued, the parties by stipulation of their counsel permitted a second amended bill of complaint to be filed.

The second *amended* bill, i. e. the third bill, averred that when the plaintiff ascertained that the agreement provided for settlement on September 5th, he met the defendants "and called their attention to the fact that settlement would have to be made on or before September 5th, 1941, that he was ready, willing and able to make settlement on September 5th, 1941 . . . ; the defendants . . . requested . . . that the time of performance thereof be fixed at September 23rd, 1941." This, he avers, was agreed to.

The preliminary objections to this bill were, inter alia: "The relief asked for requires reformation of the agreement of sale . . ."; "if reformation be granted", that would reduce the agreement "to a parol contract for the sale of real estate", and would be non-enforceable under the Statute of Frauds.

The court sustained these objections, using the language already quoted, and cited, inter alia: *Piesneski et ux. v. Stepien et ux., aplnts.*, 300 Pa. 161, 150 A. 296.

To entitle a person to specific performance of a contract "there must have been a valid subsisting contract, . . . and the instrument must be clear, unambiguous, and

certain, . . ."; Story's Equity Jurisprudence, 14th ed., vol. 2, sec. 987, p. 365. The exercise of equity power respecting the rescission and specific performance of contracts "is not a matter of right in either party, but it is a matter of discretion in the court, . . . of that sound and reasonable discretion which governs itself as far as it may by general rules and principles, but which at the same time withholds or grants relief, according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties": Ibid sec. 1026. See also 25 R. C. L. 270, sec. 71.

Plaintiffs equity was not clear and the chancellor's discretion was well exercised.

The decree is affirmed at appellants' cost.