916 A.2d 619

Karen PRIDGEN, Individually and as Personal Representative of the Estate of Lendon N. Pridgen, Deceased; and as Personal Representative of the Estate of Anthony W. Cipparone, Deceased and Denise Diggen, Individually and as Personal Representative of the Estate of Daniel Diggen, Deceased, and Debra Johnson, Individually, and on Behalf of Tyler Johnson, As Parent and Natural Guardian of Tyler Johnson, a Minor,

v.

PARKER HANNIFIN CORPORATION and Basco Flying Service, Inc. and Textron Lycoming Reciprocating Engine Division and Textron, Inc. and Avco Corporation.

Appeal of Textron Lycoming Reciprocating Engine Division, Textron, Inc. and Avco Corporation.

Supreme Court of Pennsylvania.

Submitted Dec. 11, 2006.

Decided Feb. 21, 2007.

Anne Marie Thornton Field, Esq., James E. Robinson, Esq., Patrick J. O'Connor, Esq., Elizabeth Chambers Bailey, Esq., Cozen O'Connor, Philadelphia, for Textron Lycoming Reciprocating Engine Div./Textron, Inc./Avco Corporation.

Arthur A. Wolk, Esq., Wolk Law Firm, Philadelphia, for Karen Pridgen, Debra and Kevin Johnson, Denise Diggen.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

### OPINION ON REARGUMENT

Justice SAYLOR.

The background for this matter in which we have permitted reargument, submitted on the briefs, is set forth in *Pridgen v. Parker Hannifin Corp.*, 588 Pa. 405, 905 A.2d 422 (2006).

There, this Court addressed whether interlocutory appeals as of right lie from a common pleas court's orders denying summary judgment in consolidated product liability cases, on

motions of defendant airplane engine manufacturers grounded on an eighteen-year federal statute of repose established in the General Aviation Revitalization Act of 1994.[1] Once it was determined that the appeals were proper, we proceeded to address the merits on account of the age of the case and because multiple remands already had ensued, noting that the matter was fully briefed and referencing the merits submissions made to the common pleas court. Ultimately, we held that the common pleas court erred in holding that a rolling provision exempts Appellees' claims from GARA repose by virtue of Appellant's status as original manufacturer, type certificate holder, and/or designer, with regard to alleged defects associated with replacement parts that they did not physically manufacture or supply.[2] Further, we held that Section 400 of the Second Restatement of Torts does not give rise to continuing liability on the part of a defendant/manufacturer over and against GARA with regard to replacement parts that the defendant/manufacturer did not actually supply. We also noted that the litigation is complex, and other grounds were asserted by Appellees in their efforts to avoid summary judgment, and we remanded to the common pleas court without foreclosing the possibility that the cases might proceed to trial in light of such grounds.

Appellees filed an application for reargument, complaining that they had not been afforded an opportunity to make a full presentation to this Court on the merits in the appeal, since the issue that was accepted for review concerned only the collateral order doctrine. Although Appellees did brief the matter extensively in the common pleas court, and we considered this briefing in the initial appeal, their point is well taken.

1. Pub.L. No. 103–298, 108 Stat. 1552 (codified as amended at 49 U.S.C. § 40101, Note).

2. As developed in our initial opinion, GARA's rolling provision provides that no civil action may be brought "[w]ith respect to any new component, system, subassembly or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition." GARA § 2(a)(2), 49 U.S.C. § 40101, Note.

Because we agree it is best for the parties to an appeal to be afforded the opportunity to make a direct presentation to an appellate court concerning issues that will be addressed in the appeal proceedings, we granted reargument to allow for this presentation, tailoring the issues according to the holding in the initial opinion. The matter is now fully briefed in this Court.

Appellees contend that we erred in our initial opinion by adopting too narrow an approach to GARA's rolling provision. The linchpin of Appellees' argument is that GARA contains no language limiting application of the rolling provision exclusively to the physical manufacturer or seller of a particular replacement part. Appellees highlight that the hierarchical structure of responsibility assigned by the Federal Aviation Act and associated regulations demands that the aircraft engine manufacturer ensure the safety of all engine components that can affect safe operation, regardless of who physically manufactures them. Therefore, according to Appellees, the common pleas court correctly held that GARA's eighteen-year period of liability exposure began anew in 1996 for any claims brought against Appellants relative to the engine parts for which they would otherwise bear manufacturing responsibility. Appellees recognize that there are decisions from other jurisdictions that are in tension with their broad-scale approach to the rolling provision, but they contend that these can be reconciled with their perspective if the term "manufacturer," for purposes of this provision, is not limited to the physical builder or seller. In addition, Appellees argue that Appellants should be deemed liable for component defects just as the part's physical manufacturer under Section 400 of the Second Restatement of Torts, because, although Appellants did not actually supply the replacement parts, they put the components out as their own, and the replacement parts alleged to have caused the accident were installed according to manufacturer requirements.

Having again considered Appellees' arguments, we reaffirm our prior decision. All parties to the appeal have acknowledged, in various passages of their presentations, that it is

appropriate to consider Congressional purposes and GARA's legislative history in interpreting this remedial legislation. As reflected in our prior opinion, the legislative history makes clear that Congress enacted GARA to ameliorate the impact of long-tail liability on a declining American aviation industry in furtherance of the national interest. *See Pridgen,* 588 Pa. at 415, 422, 905 A.2d at 429, 433. A key assumption underlying GARA was the notion that any design defects in aircraft components generally will be discovered within the eighteen year period preceding repose. *See* H.R.Rep. No. 103–525(I), at 3 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1638, 1640 ("It is extremely unlikely that there will be a valid basis for a suit against the manufacturer of an aircraft that is more than 18 years old. Nearly all defects are discovered during the early years of an aircraft's life."); H.R.Rep. No. 103–525(II), at 6 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 1648 ("In essence, the bill acknowledges that, for those general aviation aircraft and component parts in service beyond the statute of repose, any design or manufacturing defect not prevented or identified by the Federal regulatory process by then should, in most instances, have manifested itself."). Further, it was certainly understood that component parts are subject to regular replacement under preventative maintenance regimens in the aviation industry.

Thus, as we explained in our initial opinion

The proponents of the GARA legislation recognized the essential role of preventative maintenance in the aviation industry. *See* H.R.Rep. No. 103–525(II), at 6, *reprinted in* 1994, 103rd Cong. & Admin. News, at 1647 ("Over the lifespan of a general aviation aircraft, almost every major component will be replaced."). Because we believe that the status of type certificate holder and/or designer fall under the umbrella of manufacturer conduct for purposes of GARA, it would wholly undermine the general period of repose if original manufacturers were excepted from claims relief for replacement parts under the rolling provision by virtue of that status alone. *Cf. Campbell [v. Parker–Hannifin Corp.],* 69 Cal.App.4th 1534, 82 Cal.Rptr.2d [202,] 209

[(1999)] (holding that the rolling provision applies only to the entity that manufactured the replacement part).

*Pridgen,* 588 Pa. at 427, 905 A.2d at 436. As Appellants emphasize, our decision in this regard is consistent with those of several other jurisdictions. *See Sheesley v. Cessna Aircraft Co.,* No. Civ. 02–4185–KES, 2006 DSD 6, *slip op.* at 16–19, 2006 WL 1084103, at *5 (D.S.D. Apr.20, 2006) (explaining that GARA's "replacement parts provision [applies] only to the entity that manufactured the replacement part" (quoting *Campbell,* 82 Cal.Rptr.2d at 209)).[3]

Concerning Section 400 of the Second Restatement, we previously explained that this theory of liability by its terms applies to one who supplies another's product, holding it out as his own. *See* Restatement (Second) of Torts § 400 (1965). We reaffirm our decision rejecting the common pleas court's suggestion that Section 400 could apply to displace GARA repose relative to Appellants, who did not supply the assertedly defective replacement components. Certainly, we agree with Appellees' observation that Appellants "sit at the top of the aviation food chain with respect to all components comprising the type certificated engine." Appellees' Supplemental Brief In Further Support of Their Application for Reconsideration at 22. Thus, in the absence of GARA repose, Appellants might indeed be liable for design defects in replacement parts and/or the aircraft systems within which such components function. Again, however, consistent with the approach of a number of other jurisdictions as referenced in our original opinion and above, we believe that it would undermine Congress's purposes to hold that GARA's rolling provision is

3. Parenthetically, other jurisdictions have also reasoned that GARA's period of repose is not displaced with respect to entire aircraft systems, such as the fuel system, by the replacement of component parts of such system. *See id.* at 13–14 (citing, *inter alia, Hiser v. Bell Helicopter Textron Inc.,* 111 Cal.App.4th 640, 4 Cal.Rptr.3d 249, 257 (2003)); *see also Hinkle v. Cessna Aircraft Co.,* No. 247099, 2004 WL 2413768, at *8 (Mich.Ct.App. Oct.28, 2004) ("[W]e would effectively permit plaintiff to circumvent the GARA statute of repose by allowing plaintiff to bring suit against any manufacturer of a part when a sub-part (that is the actual cause of an accident) was replaced or added to it, even if the original part was over eighteen years of age.").

triggered by the status of original aircraft manufacturer, type-certificate holder, and/or original designer alone.[4]

Finally, it merits repeating that Appellees have made several other averments in this complex litigation that, if borne out in the evidence, may support ongoing liability consistent with GARA and its underlying policies. For example, Congress specified that misrepresentation, concealment, or withholding by a manufacturer of material information concerning aircraft performance, maintenance, or operation would give rise to continuing liability. See GARA § 2(b)(1), 49 U.S.C. § 40101, Note. Here, Appellees have advanced material allegations of misrepresentation, concealment, and withholding, and the common pleas court has not yet addressed whether these averments can withstand a motion for summary judgment.

The proceedings on reargument are concluded and the matter is remanded per our initial Order. Jurisdiction is relinquished.

Justice BALDWIN did not participate in the consideration or decision of this case.

Chief Justice CAPPY and Justice CASTILLE, EAKIN and BAER join the opinion.

---

**4.** Notably, several of Appellees' arguments to the contrary conflate liability in the first instance with GARA repose. For example, Appellees references *Lowe v. TDY Industries, Inc.,* No. B172635, 2005 WL 1983750 (Cal.Ct.App. Aug. 18, 2005), for the proposition that Congress could not have intended to relieve engine manufacturers of responsibility for replacement components for which the manufacturer is directly responsible yet did not physically construct or sell. *See* Appellees' Supplemental Brief In Further Support of Their Application for Reconsideration, at 11. The referenced portions of *Lowe,* however, concerned only the underlying issue of liability and not GARA repose. *See Lowe,* 2005 WL 1983750, at *13.